[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION.
BEFORE THE HONORABLE STUART M. SCHIMELMAN, JUDGE
Appearances:
Representing the Plaintiff:
 BROWN JACOBSON, P.C. JOHN C. WIRZBICKI Attorney at Law 22 Courthouse Square Norwich, Connecticut 06360
Representing the Defendant:
 DEBORAH L. HADAWAY Attorney at Law 119 Hebron Avenue Glastonbury, Connecticut 06033
 Kathleen M. Amanti Court Monitor
THE COURT: This is number CV21-12169, Michael J. Neuman v. Daniel J. Ozee, Memorandum of Decision.
Plaintiff, seeks possession of the premises in question, claiming defendant's right to occupy has terminated.
Based upon evidence presented at trial and reasonable inferences therefrom, the Court finds the following: Plaintiff owned real estate located at 91 Bishop Road, Bozrah, Connecticut. In November 1988, plaintiff and defendant, who at the time were sexual partners, decided to build a home together on this property. Plaintiff conveyed a fifty CT Page 12391 percent interest in the 5.8 acre parcel to the defendant for one-half its appraised value of $40,000.00. In return, defendant gave a second mortgage to plaintiff in the amount of $20.000.00, which mortgage was subordinate to a construction mortgage in both parties names. The $20,000.00 figure was the parties shared belief that it represented one half of the value of the undeveloped land. Thereafter, a log cabin was constructed where plaintiff and defendant have resided to date. After the home was constructed and until 1995, each paid roughly one half of the household expenses including mortgage and utilities.
In 1992 the relationship between the parties changed. Each formed another sexual partnership. Defendant also learned he had a serious illness and by 1994 both parties believed that that illness was terminal. In late 1994, the parties met with Attorney Theodore Phillips to discuss the possibility of liens being placed on the home. Attorney
Phillips counseled the parties concerning Title XIX and asset transfers. The attorney explained that the jointly owned property would be subject to Title XIX liens were it to remain in the defendant's name and he incurred unpaid medical bills. He also explained that any conveyance had to be legitimate and at arm's length. Based upon the parties wishes, the attorney suggested an appraisal be obtained to arrive at a purchase price and that a legitimate purchase price would be one half of the equity of the property, disregarding the prior mortgage from defendant to plaintiff. Defendant was advised to retain independent counsel, but chose not to do so.
Although the defendant testified two appraisals were obtained, only one was presented at trial. Another meeting was held with Attorney Phillips in February, 1995, where transfer of defendant's interest to plaintiff for fair consideration was discussed as well as a living will for defendant giving plaintiff authority to make health care decisions.
In March, 1995, defendant quitclaimed his interest in the property to plaintiff; the consideration being payment by plaintiff to the defendant of $9,400.00, the perceived outstanding balance of the second mortgage. At trial, it was noted that that figure was incorrect; however, neither the parties nor Attorney Phillips could explain why, nor is it believed relevant to the issues here.
To the surprise of all, in 1996, defendant's health improved remarkably. Defendant testified that prior to the conveyance and after it, plaintiff assured him that he could continue to live in the home for the rest of his life, that nothing would change after the conveyance. Defendant realized by July, 2000, that plaintiff did not plan to reconvey CT Page 12392 the one half interest to him.
Testimony also indicated that post 1995 plaintiff improved the real estate, that defendant did not contribute monetarily to these improvements and any non-monetary contribution found to have been made by defendant is minimal. Defendant's contribution to household expenses were equal to those paid by plaintiff's new partner who resided in the home in 1996. Defendant stopped making household payments and in May, 2002, plaintiff served a Notice to Quit and in June, 2002, a complaint for possession pursuant to Connecticut General Statutes, Section 47a-23.
It is clear to the Court, and apparently the parties do not seriously dispute, that plaintiff has proved a prima facie case for possession. Where the parties are in dispute is outlined in defendant's Special Defenses.
Defendant claims in his Special Defenses that he is entitled to continued possession due to his equitable ownership, based on alternate theories; namely, partial performance of the oral agreement to defendant's detriment, unjust enrichment, waiver, estoppel or constructive trust.
Preliminarily, the Court is constrained to note that this is a sad case. A loving partnership between plaintiff and time of the reconveyance, that defendant was terminally ill and would die in the short term, a belief which, fortunately, did not come to fruition. At the time of the conveyance, defendant wanted to protect plaintiff from liens placed on the home due to defendant's illness, that at the time of the conveyance both parties believed fair consideration had been paid by plaintiff for the conveyance.
Basically, defendant claims that plaintiff perpetrated a fraud on him due to his fragile physical and mental condition caused by his illness. Defendant chose not to avail himself of independent counsel, relied on advice from Attorney Phillips, which was sound in law and made the decision to convey his interest in the property for valid consideration. Neither party anticipated defendant's recovery and any representations concerning defendant's remaining in the property are found by the Court to be "short term" in the context of defendant's expected death.
As defendant initially notes, his Special Defenses are based on equity and the claimed fraud of plaintiff.
"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues CT Page 12393 of fact . . . Fraud cannot be presumed but must be established by clear and satisfactory evidence . . ." Hathaway v. Bornmann, 137 Conn. 322, 324
(1950).
More specifically, defendant initially claims he was the victim of plaintiff's undue influence and that the reconveyance is voidable. Undue influence is usually not shown by direct proof, but rather, by inference from the facts and circumstances in a particular case. Collins v.Erdmann, 122 Conn. 626 (1937).
Here, the parties consulted Attorney Phillips, were provided sound legal advice regarding the conveyance and the defendant was told to seek independent counsel, which he declined. Instead, defendant quitclaimed his interest in the property for valid consideration, hoping to protect plaintiff from liens should the medical bills go unpaid. Rather, than fraudulent misrepresentations causing defendant to reconvey his interest, the Court finds it was defendant's love and concern for plaintiff at the time which caused him to act.
Defendant next claims that there was an oral agreement regarding his rights to continue as an owner and possessor of the property, removing the legal requirement that the agreement be in writing and removing it from operation of the Statute of Frauds. While the Court recognizes the legal concept that partial performance can take a contract out of the Statute of Frauds, such concept avails nothing to defendant here. Nothing in the, evidence indicates an agreement between plaintiff and defendant created an interest in the premises post reconveyance. Again, while there was evidence that plaintiff told defendant nothing had changed and he could continue to reside in the premises, the believed defendant's life expectancy was short term and not meant to bestow anything post conveyance to thwart the quit claim of defendant's interest for fair consideration.
Defendant next claims by way of Special Defense estoppel and waiver. Waiver and estoppel are recognized as proper issues in a summary process action. Norling v. Anthony, No. X05 CV99-0175669S (January 2, 2001). Here, defendant claims that plaintiff made promises to him upon which he relied and changed his position as legal owner for the worse. Defendant further claims that the time plaintiff allowed to pass before seeking to remove him from the property constitutes a waiver
With respect to estoppel, the Court has already found plaintiff did not make alleged promises upon which defendant relied, but rather reconveyed for other reasons with no reasonable expectation that post conveyance he continued to have a valid legal interest in the premises. With respect to CT Page 12394 the estoppel claim, testimony indicated that defendant's illness was in remission even at the present time. Nothing in the evidence shows plaintiff waived his right to seek summary process as the record title holder.
Defendant next contends that plaintiff was unjustly enriched to his detriment by virtue of duress and abuse due to his weakened position and the trust defendant had in plaintiff. As sated in Riccio v. Riccio, No. HSPP-107359 (May 1, 2001), "The equitable device of a constructive trust may be used to remedy unjust enrichment which results from not disposing of property as promised after the promise induced someone with whom the promissor shared a confidential relationship to transfer the property . . . There must a duty owed or a fiduciary or other special relationship between the parties . . ."
The relationship that existed in the present case was one of a sexual partnership. Considering that the reconveyance took place only after legal advice from Attorney Phillips and that the transfer was for valid consideration, no fiduciary relationship was proven. Further, defendant was paid proper consideration for his interest in the property and no promises made by plaintiff to bestow an interest in defendant in the property post judgment. Any claim of unjust enrichment has not been proved.
Defendant's next claim is one of constructive trust. "A party who has been unjustly enriched may be transformed into a trustee of a constructive trust created for the benefit of the injured party. Before the constructive trust can be created, however, there must be a duty owed or a fiduciary or otherwise special relationship between the parties."Norling v. Anthony Ibid 2001 Ct. Sup. 217, 242 (January 2, 2001)
As previously stated, the defendant has failed to prove the necessary confidential relationship and/or the plaintiff was unjustly enriched, valid consideration having been paid to defendant for his interest in the subject property.
Ultimately defendant recognizes that his claims are grounded in equity. The evidence indicates, not fraud, but a mutual belief at the time that defendant was terminally ill, causing the defendant to act after competent legal advice, to protect someone he loved. That plaintiff chooses not to reciprocate now does not give the Court legal reason to invoke equity to undo what the parties legally agreed to do.
For many years this Court has told juries, sympathy cannot play a part in decision making and the Court has reminded itself of that in rendering CT Page 12395 this decision.
Accordingly, Judgment enters for plaintiff for possession.
Schimelman, J.
DOCKET NUMBER: CV-21-12169 SUPERIOR COURT, G.A.-21
MICHAEL J. NEUMAN NEW LONDON JUDICIAL DISTRICT
VS. AT NEW LONDON
DANIEL J. OZEE SEPTEMBER 27, 2002
CERTIFICATION
I hereby certify that the foregoing pages containing a true and accurate copy of the tape transcribed in the above entitled case, heard before the Honorable Stuart M. Schimelman, Judge of the Superior Court, on September 27, 2002, in New London, Connecticut.
Dated at New London, Connecticut, this 1st day of October, 2002.
Kathleen M. Amanti Court Monitor CT Page 12396